# James W. Crosby MS PhD
# CBCC-KA, CDBC
# Canine Aggression Consulting LLC

1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *
canineaggression@gmail.com


25 March 2026

RE: KIMBERLY BARUS v. THE CITY OF JACKSONVILLE, FLORIDA et al.

This is a supplement to my original expert report and opinions, and includes rebuttal opinions, in the case of  KIMBERLY BARUS, Plaintiff, vs. THE CITY OF JACKSONVILLE, FLORIDA, a political subdivision of the State of Florida, and CITY OF JACKSONVILLE SHERIFF DEPUTY KARL LAMPKIN, in his individual capacity.

This supplement is submitted with full awareness and notice that there remains substantial evidence to be provided by the Jacksonville Sheriff's Office and by deposition and testimony, any or all of which may affect my professional opinion.

All my opinions herein are rendered to a reasonable degree of scientific certainty and are informed by the type of evidence on which professionals in my field typically rely.

POINTS ALLEGED BY DEFENDANT'S EXPERT:

1) Mr. Klinger argues that Officer Lampkin acted properly by investigating the issues that he was dispatched to investigate. Those issues were a) an alleged incident regarding a possible aggravated assault by Mr. Barus against Javion Ellington and an animal complaint where two dogs belonging to the Barus family had allegedly chased Ellington while off the Barus' property.

Lampkin investigated the aggravated assault complaint properly by interviewing the persons present and reportedly involved. Lampkin then proceeded to investigate the animal complaint of dogs running at large.

The possible violation of dogs running at large occurred some time before Lampkin even received the call, and significantly before Lampkin arrived at the scene. His investigation of that complaint was properly to question those present, look at the fencing or containment plans for the dogs, and to then act within the law. Due to the fact that the alleged violation did not occur in his presence, his possible actions were limited to two options; issue a notice of violation of the Jacksonville Ordinance Code or document the incident and refer it to Jacksonville Animal Care and Protective Services for follow-up.

In the proper investigation of an animal complaint, an investigating JSO officer is not precluded from investigating such a complaint due to jurisdiction conflict. An Officer of JSO has full statutory authority and ability to investigate an animal complaint, or any complaint of a violation of Florida State Statute or Jacksonville Municipal Code, and to

# James W. Crosby MS PhD
# CBCC-KA, CDBC
# Canine Aggression Consulting LLC

1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *
canineaggression@gmail.com

enforce any violations of such. However, proper investigation does not include setting up a scenario, as Lampkin did, to see if maybe the violation might be repeated under any of a variety of circumstances. Investigation and thus enforcement must be focused on what has already happened, not a projection of what might happen. Thus, Lampkin exceeded his authority and the process that any well-trained and competent officer would follow to investigate a reported violation that had already occurred. What might happen if the gate was kept open by Mrs. Barus as she stood just outside the gate was irrelevant.

2) Klinger opines that it was appropriate for Lampkin to shoot the dog. Yet here we enter the realm of anticipated actions, reasonable expectation of behavior of a domestic dog, and failure to plan or prepare for a foreseeable and avoidable outcome.

It should have been obvious to Lampkin that when he told Mrs. Barus to bring the dog out and then stand by while the gate to the fenced yard was open there was a chance that the dog would exit the yard, In fact Lampkin's responses to Mrs. Barus, and the tone of the conversation wherein the question was raised about the dog exiting an open gate, was tilted towards Lampkiin's apparent belief that the dog would exit the gate. Lampkin was also experimenting with a dog that was unleashed and had allegedly already threatened Ellington when it was loose. Yet Lampkin alleges that he was surprised that the dog approached, and unprepared with any non-lethal option to guard himself from the completely preventable alleged threat from the dog he instructed be let loose.

Certainly a police officer has the ability to protect himself from a threat of serious bodily injury or death. What a police officer does not have is the authority to place himself deliberately in a position where he or she create the opportunity for threat and then use needless deadly force as a result of that created opportunity. This is easily illustrated in the use of deadly force against the drivers of motor vehicles. A motor vehicle, driving directly at and officer, definitely presents a serious threat of injury of death. For an officer to deploy deadly force against the driver of an onrushing motor vehicle would certainly be reasonable,, and in fact normal. Yet there are rules that an officer cannot knowingly jump in front of a moving motor vehicle and then claim that he was addressing a valid threat. Most agencies and indeed the law recognizes that an officer cannot lawfully kill someone for a threat that the officer has created.

In the case at hand, Lampkin was safe, as regards the possible threat from dogs, while he was talking with Mrs. Barus. Lampkin then instructed Mrs. Barus to experiment and see if her dog, as Lampkin already expected, would run out of an open gate. When the dog did act as Lampkin expected, with Lampkin taking no protective action, Lampkin shot and killed the dog. This killing was fully avoidable, was outside the scope of proper

# James W. Crosby MS PhD
# CBCC-KA, CDBC
# Canine Aggression Consulting LLC

1435 Oak Haven Rd. * Jacksonville, Florida 32207 * 904-476-7655 *
canineaggression@gmail.com

police procedure, and was fully due to Lampkin's improper and incompetent attempt to investigate what might happen under particular circumstances that he, Lampkin, created.

I explicitly reserve the right and ability to amend, modify, or expand this opinion based on the introduction of additional evidence or items not in my possession. I also reserve the right to research and examine other materials not listed above to assist in establishing further opinions as such may become known or necessary.

Respectfully submitted,

Dr. James W. Crosby, M.S., PhD.